UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                                      :
MICHAEL L. SMIRLOCK,                                  :
                                                      :
                              Petitioner,             :
                                                      :     04 Civ. 9670 (GEL)
                    v.                                :
                                                      :     **OPINION AND ORDER**
UNITED STATES OF AMERICA,                             :
                                                      :
                              Respondent.             :
------------------------------------------------------x

GERARD E. LYNCH, District Judge:

On May 24, 2002, this Court sentenced petitioner Michael Smirlock principally to imprisonment for 48 months, following his plea of guilty to securities fraud. He now moves pursuant to 28 U.S.C. § 2255 to vacate or reduce his sentence, arguing that by following the United States Sentencing Guidelines, as applied to his case, the Court sentenced him unconstitutionally in light of subsequent Supreme Court decisions in Blakely v. Washington, 542 U.S. ___, 124 S. Ct. 2531 (2004), and United States v. Booker, 543 U.S. ___, 125 S. Ct. 738 (2005). The petition will be denied.

The Government argues that Smirlock's petition must fail for a variety of procedural reasons. Only one of these needs to be addressed because it is dispositive. After Smirlock's petition was filed, the Second Circuit ruled that Booker should not be applied retroactively to convictions, such as this one, that were final at the time it was decided. Guzman v. United States, ___ F.3d ___, No. 03-2446-PR, 2005 WL 803214, at *1 (2d Cir. Apr. 8, 2005). See Humphress v. United States, 398 F.3d 855, 863 (6th Cir. 2005); Varela v. United States, 400 F.3d 864, 868 (11th Cir. 2005); McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005) (all holding Booker non-retroactive). See also Coleman v. United States, 329 F.3d 77, 79 (2d Cir. 2003) (holding Apprendi non-retroactive).

This decision precludes Smirlock on procedural grounds from advancing his claim for resentencing, even if that claim had merit. Nonetheless, the Court would be remiss in simply

deciding the case on that basis, leaving the impression that a potentially meritorious claim was being ignored on a technicality.

Even if Smirlock were given the full benefit of Booker, as it is applied in this Circuit, he would be entitled to no relief. As interpreted in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), Booker does not require resentencing where the trial court imposed a mandatory sentence under the guidelines, even in cases still pending on direct appeal, unless the sentencing court determines that the sentence imposed would have been "nontrivially different" had it correctly applied the guidelines only as advisory, and thus considered the sentence in accord with the factors set forth in 18 U.S.C. § 3553(a). Crosby, 397 F.3d at 118, 119. In this case, there is no question that the Court would have imposed the same sentence had the case not been governed by the guidelines.

The sentence in this case was hardly a mechanical application of the guidelines. Because of the complexity of the fraud committed by the defendant, and the difficulty of calculating the losses it caused, the Court received extensive submissions from both the defendant and the Government, and heard lengthy oral arguments about the correct calculation of the loss. Essentially, Smirlock, a money manager, misrepresented to his investors the success of the complex investment strategy he was pursuing, in an elaborate effort to mislead them about the value of the off-market investments he was making. Ultimately, the strategy proved disastrous, and the investors lost a vast amount of money. The defense plausibly argued, though, that some part of that loss was attributable not to Smirlock's fraud but to the general downturn of capital markets during the period in question. The factual and legal issues affecting the loss calculation, which would ultimately determine the applicable guideline sentencing range, were quite complex. (See S. Tr. 1-15.)

As the Court pointed out, however, there was less to the guidelines dispute than met the eye. The Government argued that the guidelines provided for a sentencing range of 63 to 78 months, while the defense maintained that a correct loss calculation would result in a range of 46

to 57 months. As the Court pointed out, "[T]here is a big difference between 46 and 78. There is a much smaller difference between 57 and 63." (S. Tr. 15.) While noting that the defense sought a departure on the ground that the loss amount, however calculated, overstated the seriousness of the offense, the Court expressed its doubts whether the technical resolution of the guidelines issues was all that important, and asked defense counsel to focus instead on what justice required:

> [S]houldn't we really be arguing about what is in justice the correct approach to the defendant's character and conduct and what would be a fair sentence in the case[,] because if you can persuade me that he only deserves two years, then to win that argument, you have to win the argument that there is a reason to depart from whatever the [sentencing range determined by the loss] number is.
> Whereas, if you fail in that argument, and if the government persuades me that an appropriate sentence is something in the range of five years in prison, then even your [guidelines] calculation permits me to do effectively that. So that all of this maneuvering over the precise calculation of [the guidelines] really is a little bit beside the point.

(Id. at 15-16.)

The Court emphasized that "what concerns me about this case is not the amount of the loss" which "often . . . overstates or understates the defendant's culpability." (Id. at 17.) The Court went on to analyze extensively the way in which a crime itself may begin with a small misrepresentation that then "start[s] to get a little more out of hand" until it "eventually becomes engulfing." (Id. at 17.) In addition, the Court also needed to consider the "deeply troubling" fact that Smirlock had a history of being sanctioned by the SEC "and has not learned from it" (id. 18), and that he had attempted to minimize the significance of the crime that he had committed to the Probation Officer. (Id. at 19.) The Court repeatedly expressed the view that under the circumstances of this case, the loss amount, which drives the guideline calculation, "has a certain arbitrary quality to it[:] if the market had gone a little less south, the number would be a little different, [but] what does that really matter to the culpability of the defendant?" (Id. at 34.)

Ultimately, the Court accepted the defendant's version of the loss calculation, finding that the appropriate sentencing guideline range was 46-57 months. The sentencing transcript made

3

quite clear that this determination was not based on wooden economic calculations. Rather, the Court stated that the guidelines require "calculations that are on the one hand very difficult to make and on the other may not be that important to make[,]" emphasizing again that "the amount of loss that actually winds up resulting from a person's conduct . . . can be arbitrary and can result from any number of factors in the market," and may not "reflect[ ] with precision the seriousness of misconduct." (Id. at 42.) The Court further observed that "neither party to this case apparently wants the court to do what might really need[s] to be done to get that number with precision, which is to have a hearing at which experts of various kinds would testify . . . [as to] exactly what that loss was and how it should be calculated." (Id. 42-43.)

The Court then imposed a sentence of 48 months. It is abundantly clear that the Court regarded this as the appropriate sentence in light of the general interests of justice and the proper purposes of sentencing. First, the sentence is above the bottom of the guideline range. Clearly, if the Court had felt compelled by the guidelines to impose a higher sentence than what the Court viewed as truly just, the Court would have imposed a sentence at the bottom of the range. Second, the Court stated in the alternative that had the Government established its preferred loss figure, the Court would have departed downward to 48 months on the ground that the loss argued for by the Government "overstate[s] the seriousness of the misconduct." (Id. at 43-44.) The Court also "decline[d] the defense's invitation to depart" to a still lower sentence, "because I think it would send entirely the wrong message to people in the financial industry and to the public at large as to the seriousness of the conduct at issue in this case." (Id. 44.)

On this record, even if Booker applied with full force, it simply cannot be argued with a straight face that the Court merely applied the sentencing guidelines as a mandatory system, and that the sentence would have been "nontrivially different" under the present, non-mandatory regime. While the Court did not explicitly refer to the sentencing factors made relevant by 18 U.S.C. § 3553(a), the Court did explicitly take into account the nature and circumstances of the offense, which were set forth fully in the discussion before the Court. The Court also considered

4

the history and characteristics of the defendant, including his "recidivism" as someone with a previous regulatory record, his high degree of education and sophistication, and his arguable lack of appreciation of the seriousness of his conduct, which the Court regarded as "extraordinarily serious." (S. Tr. 22.) See 18 U.S.C. § 3553(a)(1) (stating that the court shall consider "the nature and circumstances of the offense and the history and characteristics of the offender"). The Court expressly noted that the sentence it imposed was necessary "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2)(A). (See S. Tr. at 41-44.) There is no possibility that factors favorable to the defendant were not addressed. Smirlock was ably represented, and the Court expressly invited defense counsel to address any factors that went to "what would be a fair sentence" in light of "the defendant's character and conduct." (S. Tr. 15.) Looking back on the record today, and weighing *all* of the factors in § 3553(a) into the balance, the Court can find no reason why the sentence would have been different in any respect at all had the guidelines been applied solely in an advisory manner.

Only one further factor requires mention. Smirlock argues that "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," § 3553(a)(6), suggests that his sentence should be reduced, as the Court indicated it would do if the guidelines were not mandatory in United States v. Emmenegger, 329 F. Supp. 2d 416 (S.D.N.Y. 2004). In Emmenegger, which was decided before Booker but after Blakely, the Court noted that it would impose a 24-month sentence if the guidelines were found unconstitutional, but that under existing Second Circuit precedent directing that the guidelines continue to be followed as a mandatory system after Blakely, the correct guideline sentence was 33 months. However, Emmenegger's conduct and history were completely distinguishable from Smirlock's, and any "disparity" between the treatment of the two cases is completely "warranted." Emmenegger was a very young man with no previous record, employed in a subordinate position in a brokerage firm, who in effect used his employer's

5

money to engage in speculative investments, and ultimately lost $300,000. Emmenegger, 329 F. Supp. at 418. Smirlock was a former finance professor and high-level Wall Street player with a record of violating the securities laws, who defrauded investors in a fund he managed out of an amount variously estimated from $12.6 million to $77 million. Emmenegger's sentencing guidelines range resulted from an inescapable calculation of loss, which the Court found to somewhat overstate the extent of the defendant's culpability, while Smirlock's loss calculation already built in very favorable treatment based in large part on the same theory. The difference between their two sentences is entirely justified by the differing circumstances of their conduct and character.

Smirlock received the sentence that the Court believed, and still believes, was deserved in light of his prior history and the seriousness of his crime. The sentencing guidelines were useful in reaching that conclusion, but they did not dictate the result. If Smirlock were resentenced under the post-Booker advisory guidelines regime, his sentence would be exactly the same. For these reasons, and because in any event Booker does not apply retroactively, the petition is denied.

SO ORDERED.

Dated: New York, New York
April 20, 2005

_____
GERARD E. LYNCH
United States District Judge